UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| AARON STORM,<br><br>    Plaintiff,<br><br>  vs.<br><br>CITY OF BROOKINGS,<br><br>    Defendant. | 4:19-CV-04175-RAL<br><br><br>OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Aaron Storm ("Aaron") shattered his vertebrae while sledding down Larson Park Hill ("the Hill") in Brookings, South Dakota, during a family outing. Aaron sued the City of Brookings ("the City") for one count of negligence and one count of gross negligence, claiming that the City knew sledding on the Hill was dangerous and failed to warn of the danger or inform the public that the Hill was closed to sledding. Doc. 1 at 4–5; Doc. 21 at 9–10. The City filed a motion for summary judgment, Doc. 14, which this Court now grants.

## I.   Material Facts in the Light Most Favorable to Aaron

The Hill has been a popular sledding site in Brookings since the 1980s, and the City owns and maintains it. Doc. 15 at 1–2; Doc. 17-5 at 4; Doc. 22 at 2; Doc. 23 at 3. The east side of the Hill is the steepest side and historically the most popular side for sledding, Doc. 17-5 at 4; Doc. 17-9 at 5; Doc. 23-31 at 4; Doc. 23-27 at 14, but the public has sledded on all sides of the Hill through the years. Doc. 21 at 3.

At some point before 2013, although the record does not establish when, Sunrise Ridge Road was built near the bottom of the east side of the Hill. Doc. 17-5 at 3; Doc. 23-20 at 8. The

road created a hazard because people sledding down the east side of the Hill would sometimes sled into the street and oncoming traffic. Doc. 17-5 at 3. To prevent injury and traffic accidents, the City placed large hay bales at the bottom of the east side of the Hill to "catch" sledders before they slid onto the street. Doc. 17-5 at 3; Doc. 23-18 at 3. But then the City began to receive reports that people sustained injuries from sledding into these hay bales. Doc. 23-18 at 2. The City did not keep records of these injuries or any injuries generally from sledding on the Hill, but knew that the hay bales in particular and sledding on the Hill generally caused injuries over the years. Doc. 22 at 3; Doc. 23-18 at 3. During the 2013 and 2014 winter season, the City's Parks and Recreation Fall and Winter Activity Guide advertised the Hill as a sledding hill except when closed for extreme icing or other dangerous weather conditions. Doc. 23-2 at 8. The guide further explained that the hay bales at the bottom of the Hill were installed for public safety. Doc. 23-2 at 8.

Aaron was injured while sledding on the south side of the Hill. Doc. 1 at 3. While the City knew that people sometimes suffered injuries from sledding on the steeper east side of the Hill, City employees did not testify about or otherwise document any injuries sustained from sledding on the south side of the Hill. Doc. 15 at 3; Doc. 16 at 5; Doc. 17-8 at 3; Doc. 17-9 at 12–13; Doc. 22 at 2; Doc. 23-18 at 2; Doc. 23-21 at 9; Doc. 29 at 1. The south side has a gentler slope, but there is a concrete drainage ditch that runs east to west along its base over which sledders sometimes passed when sledding down the Hill's south side. Doc. 17-5 at 4, 6; Doc. 17-9 at 5. The ditch is about three feet wide and was constructed in the late 1980s or early 1990s. Doc. 15 at 1; Doc. 23-18 at 3; Doc. 23-21 at 14. The record does not state how deep the ditch is, but the edge of the ditch forms a bump that sledders pass over before dropping down several inches or more into the ditch. Doc. 17-2 at 9; Doc. 17-5 at 4. The drainage ditch is plainly visible from the

south side of the Hill when there is light snow on the ground. Doc. 16 at 3–5; Doc. 17-2 at 4–5; Doc. 23-20 at 8.

In January 2014, Dr. Richard Hieb wrote the City's Director of Parks and Recreation Peter Colson stating that, in the past week, he and other doctors had treated several injuries from children who had been sledding on the Hill. Doc. 23-7; Doc. 23-18 at 3. The letter stated that "[t]hese injuries invariably involve running into the large cornstock bales that are placed at the base of the north [sic] end of the hill," and over years of treating sledding injuries in the City, "it has become obvious to the medical community that [the bales] in themselves are causing injuries." Although the letter refers to hay bales on the "north" side of the Hill, the record makes clear that the hay bales were installed on the east side. Doc. 17-5 at 3; Doc. 23-18 at 3; Doc. 23-23 at 9. Dr. Hieb recommended replacing the bales with smaller bales that would provide more cushion or alternatively, "perhaps sledding off the north [sic] side of Larson Hill should be forbidden." Doc. 23-7.

At a City Council meeting in February 2015, City Manager Jeff Weldon proposed closing the Hill to sledding. Doc. 21 at 4. Weldon stated:

> We have long known of the potential injury hazards associated with downhill sledding at Larson Park. While a very popular winter recreational activity for kids, we repeatedly get reports of injuries from children hitting obstacles at the bottom of the hill. Despite our efforts to make the hill as safe as possible, accidents are unavoidable. However, the frequency is beginning to alarm us. Every year we install hay bales at the base of the hill as a barrier to over-sledding. For the most part, while they are effective, some injuries still result. . . . It is unfortunate that such incidents could result in the elimination of an otherwise enjoyable activity for the vast majority of users. We will re-examine this issue over the summer and see if we can find a better alternative for next winter.

Doc. 21 at 4.

In the fall of 2015, Weldon officially decided to close "the Hill" to sledding. Doc. 21 at 5; Doc. 23-1; Doc. 23-8 at 1; Doc. 23-19 at 6. The recorded notes of the City's Parks and Recreation

advisory meeting that fall stated that "Larson Hill" would be closed to sledding.  Doc. 19 at 26; Doc. 23-1 at 1.  Yet Weldon and Colson later testified in their depositions that they had only closed the east side of the Hill[1] because that is where, in their view, all the injuries occurred.  Doc. 17-7 at 2–5; Doc. 17-9 at 4–7.  Weldon told his staff that only the east side of the Hill was closed, Doc. 17-7 at 9, but some City employees believed that the entire Hill had been closed to sledding.  Doc. 17-5 at 9; Doc. 23-27 at 15.

This absence of clarity as to whether part or all of the Hill was closed to sledding was accompanied by less than ideal communication about the City's no sledding or restricted sledding policy for the Hill.  Following the 2015 decision, the City's fall and winter recreational brochure deleted references to sledding on the Hill.  Doc. 22 at 10; Doc. 23-4; Doc. 23-11; Doc. 23-12; Doc. 23-13; Doc. 23-14; Doc. 23-15; Doc. 23-19 at 6; Doc. 23-6 at 2.  The City's Parks and Recreation Department did not publish any notice about the closure on its Facebook page.  Doc. 21 at 12; Doc. 22 at 11.  But a community newspaper, the Brookings Register, published the decision and included this quote from Weldon: "We are closing the one side of the hill facing the street.  We are not going to close the other side.  We're doing this for liability and safety reasons."  Doc. 23-9 at 2; Doc. 23-10; Doc. 29 at 4.  KDLT news also interviewed Weldon and did a news report on the closure, during which Weldon explained that while the east side of the Hill was closed, sledders were welcome to sled on the other sides of the Hill.[2]  Doc. 23-19 at 6; Doc. 23-27 at 14.

---

[1] The City initially conceded that the south side of the Hill was closed before 2018 in its answer to Aaron's complaint.  Doc. 4 at 1.  However, the City's position after discovery is that only the east side of the Hill was closed to sledding.  Doc. 16 at 12; Doc. 30 at 7.

[2] The City's decision to restrict sledding on the Hill incited some public backlash.  A Facebook group called "Take Back the Hill" formed to protest the decision.  Doc. 17-7 at 4; Doc. 23-21 at 7; Doc. 23-27 at 14.  Weldon also received derogatory anonymous messages on his work and personal voicemail shortly after the closure was announced.  Doc. 17-7 at 4; Doc. 23-27 at 14.

In the fall of 2015, the City placed a no sledding sign on the east side of the Hill. Doc. 22 at 9; Doc. 23-24 at 5; Doc. 23-27 at 14. But citizens routinely took down such signs. Doc. 22 at 10. As a temporary deterrent, the City installed a fence in the middle of the east slope of the Hill. Doc. 23-23 at 7; Doc. 23-18 at 3. But after heavy snow, sledders packed snow "ramps" up to the fence and sledded over it. Doc. 23-23 at 8. The City did not have an official policy for monitoring and maintaining sledding conditions on the Hill. Doc. 22 at 10; Doc. 23-22 at 5; Doc. 23-23 at 9, 15. Still, during the 2015 and 2016 winter season, City employees would periodically check the east side of the Hill and remove these snow "ramps." Doc. 23-23 at 8.

The City removed the fence sometime around the summer of 2016 and planted trees on the east side of the Hill to permanently deter sledders. Doc. 23-23 at 8. After the trees were planted, the public continued sledding on the other sides of the Hill. Doc. 23-21 at 7. The City placed a no sledding sign on the east side of Hill in the fall of 2016, 2017, and 2018. Doc. 23-21 at 11; Doc. 23-23 at 15, 17–18.

Although the City's Department of Parks and Recreation had stopped advertising the Hill as a sledding hill in 2015, South Dakota State University continued to publish materials describing the Hill as a sledding hill. Doc. 22 at 14. The City's Visitor's Bureau also advertised the Hill as a sledding hill from 2017 to 2021. Doc. 22 at 13–14; Doc. 29 at 7. Internet searches suggest that the Hill remains a popular place for sledding. See Doc. 23-16; Doc. 23-17.

Aaron was injured on November 17, 2018, when he and his wife Diedre were visiting Diedre's parents in Brookings for Thanksgiving with their two young daughters. Doc. 21 at 15. Aaron had been raised in Sioux Falls and Diedre had been raised in Brookings, but they live in Texas. Doc. 21 at 15; Doc. 22 at 15. Aaron's daughters, Ellie and Mia, had never been sledding; and Aaron and his daughters, along with Aaron's brother-in-law Kevin and Kevin's daughter

Riley, decided to go sledding and parked on the south side of the Hill in Larson Park. Doc. 15 at 1; Doc. 24 at 1; Doc. 23-20 at 8. Aaron believed that the Hill was open to sledding, and the Hill did not have any no sledding signs on its south side. Doc. 21 at 9. A no sledding sign had been posted on the east side of the Hill that year, but it had been taken down before Aaron was injured. Doc. 21 at 9; Doc. 22 at 9. The City had not posted any no sledding sign on the south side of the Hill.[3] Doc. 21 at 9; Doc. 22 at 9.

There was light snow on the ground, but the outline of the concrete drainage ditch and grass nearby were visible. Doc. 15 at 2; Doc. 17-2 at 9. Photographs of the drainage ditch on the day of the accident, taken from Aaron's cellphone, are provided at the end of this opinion. Aaron admitted he must have crossed the drainage ditch to walk to the top of the Hill, but he did not remember doing so. Doc. 15 at 1–2; Doc. 22 at 1; Doc. 23-20 at 8; Doc. 29 at 9.

Ellie, Mia, Riley, and Kevin sledded down the south side of the Hill first, while Aaron recorded them on his cell phone. Doc. 15 at 2; Doc. 21 at 16. Kevin and Riley sledded down the Hill and crossed the drainage ditch. Doc. 15 at 2. Kevin stated that he felt a little bump when he went over the ditch but suffered no injuries. Doc. 17-2 at 6. Kevin was not aware that the ditch was made of concrete, and Aaron's footage showed Kevin's footprints in the ditch over the snow. Doc. 17-2 at 7–9. Ellie sledded down the Hill and stopped before reaching the drainage ditch. Doc. 17-2 at 8, 10. Mia also sledded down the Hill without injury. Doc. 17-2 at 10.

Then Aaron sledded down the Hill with Ellie in his lap. Doc. 21 at 16; Doc. 23-20 at 11. When Aaron reached the bottom of the Hill and went over the drainage ditch, he "caught air" and

---

[3] The City initially stated that it had posted a no sledding sign on the south side of the Hill at the time of Aaron's injury. Doc. 4 at 2. After discovery, the parties agree that the lone no sledding sign was posted on the east side of the Hill before Aaron's injury. Doc. 21 at 9; Doc. 22 at 9; Doc. 29 at 5.

came down on his tailbone at the far side of the ditch. Doc. 1 at 3; Doc. 21 at 16. Aaron stated

that it "felt like a grenade had gone off in [his] back." Doc. 21 at 16. He was in immediate and

severe pain and was taken to the emergency room in Brookings before being transported by

ambulance to Sioux Falls. Doc. 21 at 16; Doc. 23-6 at 2. Aaron had shattered a vertebrae and

required multiple surgeries. Doc. 21 at 16–17; Doc. 23-6 at 2–3. After Aaron was injured, no

sledding signs were posted on all sides of the Hill. Doc. 21 at 10.

Aaron suffers from pain and disability due to his injury. Doc. 1 at 3; Doc. 21 at 17. He

used to be very active, but now cannot do many of the physical activities he used to enjoy without

experiencing severe pain. Doc. 21 at 17. He also has difficulty getting more than three or four

hours of uninterrupted sleep and cannot do basic household tasks without pain. Doc. 21 at 17.

## II.     Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986). A party opposing a properly supported motion for summary judgment "may not

rest upon mere allegations or denials" in his pleadings but "must set forth specific facts showing

that there is a genuine issue for trial." Gacek v. Owens & Minor Distribution, Inc., 666 F.3d 1142,

1145 (8th Cir. 2012); see also Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005).

To establish that a material fact is genuinely disputed, the party opposing summary judgment must

"cit[e] to particular parts of materials in the record" that establish a genuine dispute or "show[]

that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P.

56(c)(1)(A), (B). In ruling on a motion for summary judgment, the facts and inferences fairly

drawn from those facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986).

South Dakota law governs the substantive issues in this case based on diversity of citizenship jurisdiction. Bores v. Domino's Pizza, LLC, 530 F.3d 671, 674 (8th Cir. 2008); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under South Dakota law, cities may be liable for "gross negligence or willful or wanton misconduct" for the care and maintenance of public land used for recreational purposes. SDCL § 20-9-22. "In South Dakota, the phrases *gross negligence* and *willful or wanton misconduct* mean the same thing." Fischer v. City of Sioux Falls, 919 N.W.2d 211, 215 (S.D. 2018). "[R]eckless, willful, or wanton misconduct . . . entails a mental element. The defendant must *know or have reason to know* of the risk and must in addition proceed without concern for the safety of others." Id. (cleaned up and citation omitted). While "willful and wanton misconduct is not identical to intentional conduct, . . . [it] does partake to some appreciable extent of the nature of a deliberate and intentional wrong." Id. (cleaned up and citations omitted). "[A] defendant's reckless state of mind may be inferred from conduct and actions so patently dangerous that a reasonable person under the circumstances would know, or should know, that his conduct will in all probability prove disastrous." Gabriel v. Bauman, 847 N.W.2d 537, 543 (S.D. 2014) (cleaned up and citation omitted).

"[T]he requirements for alleging willful or wanton misconduct (i.e., gross negligence) are different than those for alleging negligence. While a plaintiff alleging negligence must prove merely that some harm is possible, a plaintiff alleging willful or wanton misconduct must prove a substantial probability of serious physical harm." Fischer, 919 N.W.2d at 215; see also Gabriel, 847 N.W.2d at 541. The Supreme Court of South Dakota has stated that "draw[ing] the line of willful, wanton, or reckless conduct too near to that constituting negligent conduct" risks "opening

a door leading to impossible confusion and eventual disregard of the legislative intent to give relief from liability for negligence." Gabriel, 847 N.W.2d at 543 (cleaned up and citation omitted). "Whether one acts willfully, wantonly, or recklessly is, like negligence, normally a jury question." Id. at 542.

### III.   Discussion

Aaron's first cause of action is for negligence, doc. 1 at 3–4, but cities are immune from liability for negligent conduct concerning public land used for recreational purposes under South Dakota law. SDCL §§ 20-9-20, 21; see also Fischer, 919 N.W.2d at 217. As such, the City is entitled to summary judgment on Aaron's negligence claim, and Aaron does not argue against summary judgment on his negligence claim, Doc. 21 at 18–26. Aaron however argues that the City was grossly negligent through willful and wanton misconduct in its management of the Hill, and that at a minimum, a genuine dispute of material fact exists. Doc. 21 at 18–26. A South Dakota city cannot be liable in a case such as this unless it was grossly negligent, that is, was engaged in willful and wanton misconduct. SDCL § 20-9-22.

The parties dispute whether the City had closed the south side of the Hill before Aaron's injury. Relying on Weldon's memo to the City Council, Weldon's statements at the City Parks and Recreation advisory board meeting in the fall of 2015, and the testimony of several City employees, Aaron argues that the entire Hill, including the south side, had been closed to sledding before his injury because the City was aware of injuries associated with sledding down the Hill. Doc. 21 at 2, 4, 6; Doc. 22 at 16; Doc. 24 at 1–2. Aaron then argues that the City was grossly negligent for failing to post signs that the south side of the Hill was closed to sledding or was dangerous. Doc. 21 at 2. Aaron maintains that had signs been installed on the south side of the Hill, then he would not have gone sledding and been injured. Doc. 21 at 9. He further claims there

was sufficient evidence that the City acted with a reckless state of mind because it had received reports of injuries sustained from sledding down the Hill over the years and failed to keep official records of these injuries.  Doc. 21 at 20, 23–24.

In its answer to Aaron's complaint, the City conceded that the south side of the Hill had been closed.  Doc. 4 at 1.  However, the City now claims that the south side of the Hill was never closed, relying on Colson's and Weldon's testimony, public announcements that only the east side of the Hill had been closed, evidence of injuries arising from the steep east side, and the bales installed on the east side as a safety measure.  Doc. 30 at 7.  Taking the facts in the light most favorable to the non-movant Aaron, this Court must presume for purposes of ruling on the City's summary judgment motion that the reports of injuries were such that the City had closed the entire Hill to sledding.

The City also argues that it was not grossly negligent because the drainage ditch did not pose a probable and easily perceptible risk of death or serious physical harm.  Doc. 16 at 10; Doc. 30 at 5.  The City points to the absence of any evidence that the drainage ditch caused any injuries, apart from Aaron's injury, since it was built over thirty years ago.  Doc. 16 at 10–11; Doc. 30 at 3–4, 10–11.

The Supreme Court of South Dakota recently discussed the standard for gross negligence under SDCL § 20-9-22 in the closely analogous case of <u>Fischer v. City of Sioux Falls</u>, 919 N.W.2d 211 (S.D. 2018).  In that case, the plaintiff was riding a bike and took a short cut through grass at a public park in Sioux Falls when his front bike tire caught in a natural ditch hidden in the grass. <u>Fischer</u>, 919 N.W.2d at 213.  The plaintiff was thrown from his bike and suffered serious injuries including multiple fractures.  <u>Id.</u>  At the time of the accident, Sioux Falls employees knew of the

ditch and thought that a bicyclist could be injured by riding over it, but the city did not post a warning sign near the ditch or fill it in. Id. at 213–14.

The Supreme Court of South Dakota nonetheless granted the defendant's motion for summary judgment in Fischer, holding that "[t]he evidence in the record does not suggest that the rut posed an easily perceptible danger of death or other serious physical harm . . . . Nor does the evidence in the record suggest that the probability of such 'danger' is substantially greater than that required for ordinary negligence." Id. at 216. Even though "the evidence in the record suggest[ed] that the City knew its conduct posed an unreasonable risk of harm to the public (i.e., that the City was *negligent*) that evidence d[id] not suggest that the City acted with a conscious realization that a serious physical injury was a *probable*, as distinguished from a *possible* (ordinary negligence), result of such conduct." Id. (cleaned up and citations omitted). Quoting Tranby v Brodock, 348 N.W.2d 458, 461 (S.D. 1984), the court in Fischer noted that gross negligence or willful or wanton misconduct partake "to some appreciable extent . . . of the nature of a deliberate and intentional wrong." Fischer, 919 N.W.2d at 215. Indeed, there is a parallel between the elevated "gross negligence" standard under SDCL § 20-9-22 and the standard required for punitive damages under South Dakota law. See Est. of Stengle by Stengle v. Walgreen Co., No. 3:20-CV-03001-RAL, 2021 WL 858836, at *3–5 (D.S.D. Mar. 8, 2021); Doc. 37 at 5–10 in case 20-CV-03001.

Here, Aaron's claims against the City are in the nature of negligence claims—the City's laxity in collecting and keeping information on sledding injuries or policing activity at the Hill, the City's failure to post a warning sign or a no sledding sign, and the City's alleged failure to take other steps to effectively close or communicate the closure of the south side of the Hill to sledding. Yet, like in Fischer, the evidence does not support a claim that the City engaged in willful or

wanton misconduct or acted with conscious realization that serious physical injury was a probable result of that conduct.  Although the drainage ditch may have posed an unreasonable risk, it did not pose an "easily perceptible danger of death or substantial physical harm" that was "probable" rather than "possible"—especially given the dearth of evidence that anyone suffered injuries from sledding over that drainage ditch in the last thirty years.  Fischer, 919 N.W.2d at 215–16; see also Gabriel, 847 N.W.2d at 541.  The City's failures to install no sledding or warning signs on the south side of the Hill, or otherwise more effectively close the Hill to sledding, as a matter of law are not of the nature of a deliberate and intentional wrong necessary to satisfy the "gross negligence" standard set by South Dakota law to maintain this action against the City.

## IV.   Conclusion and Order

For the reasons explained, it is hereby

ORDERED that the Defendant's motion for summary judgment, Doc. 14, is granted.

DATED this 24th day of February, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

**Stills from Aaron's cellphone videos recorded on November 17, 2018, of the drainage ditch on the south side of the Hill.**

